UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL BORDEN** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 06-10466** |
| **ALLSTATE INSURANCE COMPANY, ET AL.** | **SECTION "L" (5)** |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

### I.   PROCEDURAL HISTORY

This case arises out of a dispute regarding flood insurance coverage for the Plaintiff's residential property located at 2108 Livaccari Drive in Violet, Louisiana.  The Plaintiff contends that the property suffered flood damage during Hurricane Katrina.  Following the storm, the Plaintiff attempted to submit a claim under his flood insurance policy issued pursuant to the National Flood Insurance Program by the Defendant, Allstate Insurance Company.  Allstate informed the Plaintiff that the flood insurance policy had expired as of 12:01 a.m. on July 9, 2005, because the Plaintiff did not pay his renewal premium.  The Plaintiff alleges that Allstate failed to inform him that his policy was due for renewal or that it would expire on July 9, 2005 if he did not take appropriate action.  The Plaintiff contends that he is entitled to an opportunity to pay his premium and renew the coverage.

On August 29, 2006, the Plaintiff filed the present action in the 34th Judicial District Court for the Parish of St. Bernard against Allstate.  Allstate removed the action to this Court.

There are two issues in this case.  First, the parties dispute whether or not there is coverage for Plaintiff's property damage.  This issue hinges on whether Plaintiff received notice of renewal and, if not, whether he informed Allstate of non-receipt of any renewal notice in accordance with the provisions of the policy.  The Court previously resolved this issue by

summary judgment, but the Fifth Circuit held it was a question of fact and returned the case for trial. Second, if Plaintiff's property damage is covered, the parties dispute the amount to which the Plaintiff is entitled under the policy.

The Court has carefully considered the testimony of all of the witnesses, the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law.

To the extent that any findings of fact may be construed as a conclusion of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute a finding of fact, the Court adopts them as such.

## II.     FINDINGS OF FACT

1. Plaintiff Earl Borden owned a house located at 2108 Livaccari Drive in Violet, Louisiana. In years prior to Hurricane Katrina, the property was insured under a Standard Flood Insurance Property (SFIP) issued by Defendant Allstate Insurance Company as a write-your-own (WYO) carrier participating in the National Flood Insurance Program (NFIP). The property was also insured under a homeowners insurance policy issued by Allstate.

2. Plaintiff had previously received correspondence from Allstate at the 2108 Livaccari Drive address, including copies of his flood policies, declaration pages, and renewal notices.

3. From July 8, 2004 to July 8, 2005, Plaintiff's property was insured under an SFIP numbered 1805004825.

4. Jason Raske is an Allstate flood claims manager and corporate representative for

        Allstate's participation in the NFIP as a WYO carrier with knowledge of Allstate's computer systems and third party vendors.

5. Electronic Data Solutions (EDS) was a third party processing vendor used by Allstate in 2005 to handle flood insurance policy processing and information pursuant to FEMA regulations. Allstate terminated its relationship with EDS in February, 2008. All of the Allstate records in the possession of EDS were transmitted to Covansys, which Allstate now uses as its third party flood processing vendor.

6. It was the custom and practice of Allstate in 2005 to use and direct EDS to issue, renew, and cancel flood policies. EDS compiled and maintained a computer generated Policy Activity Log of events related to the underwriting of Plaintiff's flood policy. It was the custom and practice of Allstate to incorporate and rely upon records generated by EDS, such as the Policy Activity Logs, in Allstate's day-to-day business. If Allstate records maintained by EDS were not accurate then it would be discovered in audits of those records by FEMA.

7. The Policy Activity Log for Plaintiff's flood policy establishes that on May 24, 2005, EDS mailed a renewal notice to the address listed on Plaintiff's policy informing him that his renewal premium was due July 8, 2005. The policy correctly listed his home address as 2108 Livaccari Drive. With regard to the Policy Activity Log, Jason Raske testified as follows:

> Q. Looking at Defense Exhibit 8, the first page, we went over this with Mr. Gutierrez. Tell the Court what 5-24-05 is.
> A. 5-24-05 is the renewal notice that was sent out approximately 45 days prior to the expiration.
> Q. How is this policy activity log generated?
> A. It is computer generated.

8. A Policy Activity Log kept in the ordinary course of Allstate's business establishes that on July 18, 2005, EDS mailed an expiration notice to Plaintiff at his home at 2108 Livaccari Drive informing him that his flood policy had expired on July 8, 2005, and would remain expired unless Plaintiff paid his renewal premium within 30 days of that expiration date.  At trial, Mr. Raske gave the following testimony:

> Q. What's the next entry on Defense Exhibit 8, page 1?
> A. It is 7-18-2005, renewal bill, second notice sent.
> Q. Tell the Court what that information is.
> A. That is the second notice we sent to the insured approximately ten days after the policy is lapsed as the final notice we send them.
> Q. In 2005 what was the normal course of business practice and procedures of where renewal notices were sent?
> A. They were sent to the payee, what was listed on file.
> Q. What is that address in this case?
> A. In this case would have been Earl and Anna Borden.
> Q. That's 2108 Livaccari?
> A. That is the correct address it would have went to.
> Q. What was the business practice and procedures for Allstate in 2005 for sending out the second notice or a renewal notice or expiration notice?
> .....
> A. The business practice that took place here, this entry here, 7-18-2005, is a computer generated entry to this activity log that a letter was mailed out to the insured listed on file for policy number – I can't read that. 1805004825.

9. The 7/18/2005 Policy Activity Log entry is corroborated by a copy of the Expiration Notice sent to Plaintiff, dated July 18, 2005.  At trial, Mr. Raske continued his testimony as follows:

> Q. Other than Defense Exhibit 8 is there any other record of an expiration notice sent out to Mr. Borden in 2005?
> A. There is a record we have.  It's called "the final notice letter."  We do have a copy of that.
> .....
> Q. Mr. Raske, can you identify that document?
> A. Yes.  This would be a copy of the final renewal notice that was mailed out to Mr. and Mrs. Earl Borden on 7-18-2005.
> .....

> Q. What does Defense Exhibit 6 refer to in Defense Exhibit 8?
> A. It refers to the final notice that was mailed out on 7-18-2005.
> Q. That's under normal course of business practices?
> A. Right.
> .....
> Q. Page 1 of Defense Exhibit 6. If you would point out to the Court where it says "7-18-2005."
> A. Do you see the little dotted line? Right above that, where his finger is, it says "7-18-2005." That is where it is located that the letter was generated and sent out.
> Q. So that's between the slashes; is that correct?
> A. Yes, it's between the slashes.
> Q. A date on the expiration notice, is that done in the normal course of business practices?
> A. Yes, it is.

10. Plaintiff did not pay the renewal premium to Allstate.

11. Plaintiff visited an Allstate catastrophe Center in the Bayou Vista area outside Morgan City approximately ten days after Hurricane Katrina, or approximately September 8, 2005. Plaintiff attempted to make a claim with Allstate for damage to his insured property under his flood and homeowners policies, but was informed that he had no flood policy in effect on his property at 2108 Livaccari Drive. Plaintiff explained his encounter as follows:

> Q. When did you first find out following Hurricane Katrina that you did not have flood insurance on your home in Violet?
> A. Outside of Morgan City. I believe the place was called "Bayou Vista Catastrophic Allstate Center" set up in front of a Walmart.
> Q. When did you go there?
> A. Maybe about 10 days after the storm, after I got my family all together and taken care of.
> Q. When you were advised that you did not have flood insurance, what did you tell the people at Allstate?
> A. I told them I did have flood insurance. They said that I would have to produce documents, and I explained to them that everything I had was lost in the house in the flood.

12. Plaintiff informed the Allstate representative at the catastrophe center that he thought he

had a flood insurance policy in effect.  However, Plaintiff did not specifically tell the

Allstate representative that he did not receive a renewal notice:

Q. Did you tell them that you had not received a renewal notice?
A. No, I did not tell them I did not receive the renewal notice because I thought I had flood insurance at the time.  You understand?  I did not – no, I did not tell them that.  I told them that I should have flood insurance to that date.  I should have flood insurance.
....
Q. Mr. Borden, when you were at the Allstate Catastrophic Center in Morgan City and they told you that your flood insurance had expired, did you tell them you had never received a renewal notice?
Mr. Treas: Objection, Your Honor.  That's been asked and answered.
The Court: Overruled.
Mr. Borden: I told them that I should have flood insurance.  I told them, "Yes, I have flood insurance."  They looked on their computers and came back and told me no, all I had was homeowners insurance.  At that time I told them I had flood insurance.  I should have flood insurance, yes, I told them that.
Q. Did you tell them that you had not received any evidence that you –
A. I had no evidence or nothing to offer them because all we got out of there was with, like, shirts on my back.  They wanted to see documentation, paperwork to prove it.  I told them I had none of that.  The woman even told me to go home and put a tarp over the shingles that was missing on my roof not realizing that we had eight foot of water still in the parish.  That's as much advice as they gave me.
Q. You told her you had no knowledge that you had not received –
A. I had no knowledge, no.  I should have flood insurance.  I was convinced I had flood insurance.
Q. Did you tell her you had no knowledge that Allstate had sent you a renewal notice?
Mr. Treas: Objection.
The Court: Sustained.
.....
Q. Mr. Borden, you never submitted any documents to Allstate specifically requesting Allstate to make a determination under Article VII(H)(3) of the policy, correct?
A. No, I never.

13. Plaintiff did not inform Allstate that he claimed not to have received a renewal or

expiration notice within one year of July 8, 2005, the date his flood insurance policy

expired.

14. The Plaintiff's flood policy on 2108 Livaccari Drive had lapsed once before in 2003 due to non-payment of the renewal premium. A Policy Activity Log kept by Allstate in its ordinary course of business established that a renewal bill and an expiration notice were sent to the Plaintiff prior to the 2003 lapse of the flood policy.

15. The credible evidence shows that the Defendant mailed a renewal notice and an expiration notice to the Plaintiff at his address at 2108 Livaccari Drive.

### III. CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter, which arises from a dispute over a flood insurance policy issued pursuant to the NFIP, pursuant to 28 U.S.C. § 1331, the Court's federal question jurisdiction. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009).

2. "Federal law governs disputes over coverage arising under [a SFIP]." *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984). "When such disputes arise, they are resolved under federal law by drawing upon standard insurance law principles." *Id.* (quotation omitted). Included among those standard insurance principles is the principle that "if the language of a policy is clear and unambiguous, it should be accorded its natural meaning." *Id.* (quotation omitted).

3. "[T]he provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced ...." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947)).

4. The Plaintiff's SFIP in effect between July 8, 2004, and July 8, 2005, codified in the Code of Federal Regulations, provides that:

    1. This policy will expire at 12:01 a.m. on the last day of the policy term.

        2.        We must receive payment of the appropriate renewal premium within 30 days of the expiration date.

        3.        If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date of the renewal premium, then we will follow these procedures:

                a.        If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

                b.        If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

44 C.F.R. pt. 61, app. (A)(1), art. VIII(H) (2009).

5.        The Plaintiff did not comply with the terms of his SFIP by paying the appropriate renewal premium within 30 days of the expiration date.

6.        The Plaintiff's SFIP expired at 12:01 a.m. on July 9, 2005, and was not in effect at the time of Hurricane Katrina on August 29, 2005.

7.        The Plaintiff did not carry his burden of proof to show by a preponderance of the evidence that he timely notified Allstate pursuant to the terms of the SFIP that he claimed he did not receive a renewal notice.

8.        Even if the Plaintiff established that he timely notified Allstate of non-receipt of a renewal notice, the Plaintiff would not have been entitled to a second bill providing a revised due date for payment of his renewal premium unless an investigation by Allstate revealed that Allstate failed to mail the renewal notice or made a mistake which delayed delivery of the renewal notice. The credible evidence shows that Allstate mailed the

renewal notice and an expiration notice to the Plaintiff's home address and therefore the Plaintiff did not carry his burden of proof to show by a preponderance of the evidence that he would have been entitled to a second bill.

## IV.    SUMMARY

Based on the foregoing findings of fact and conclusions of law, the Court finds for Defendant Allstate Insurance Company on all claims.

New Orleans, Louisiana, this 1st day of November, 2010.

_____
**UNITED STATES DISTRICT JUDGE**